Clarify that Mr. Stoneberger wants to, and both of these lawyers are for the appellees, is that correct? Yes, ma'am. And Mr. Stonebarger wants to use 10 minutes, and Mr. Binding wants to use 5? Yes, Your Honor, and I know this is somewhat unconventional, we don't want to make it overcomplicated. No, you can, we can follow it, we can follow it, but maybe you can just tell me what you're trying to accomplish here, and then we can. Sure. Yeah, with regard to some of the underlying factual findings of the trial court that relied on certain declarations, with regard to the click-through of the defendant's systems, Mr. Binding submitted a declaration as personal knowledge of that. Well, don't start arguing the case. What issues are the two of you? So, how are you dividing this up? Since you're the appellee, you don't have rebuttal time, right? Correct. So, when you come up here, if you tell me what issues each of you is going to cover, then if the first person gets up, we won't ask him about that issue, we'll wait until the second one. But, so, are you dividing it by issues, or what are you doing here? Only to the extent that the court has specific questions about the facts of the specific click-through argument, Mr. Binding would address that. That might not even be necessary, depending on what the original argument is. All right, so you're just dividing 10 and 5? Yes. Okay. So, and is Mr. Stonebarger going first? Yes. Okay, that's you. Gene Stonebarger, yes. That's me. So, when we, we'll put 10 on the clock, and then the second one. When your time's up, unless we're asking you questions, sit down, so you don't cut into the other person's time. But, I will tell you, Mr. Binding, since you're going second, if we're asking him questions, I won't take up your five minutes by our questions. Okay? So, you'll get five minutes. Thank you, ma'am. All right. And then, if I have to adjust on rebuttal, then I'll deal with it that way. So, on the appellants, there's two of you sitting here, but my understanding is one person's going to handle the argument. Is that correct? Yes, Your Honor. I'll handle the argument for all the appellants. Okay. Okay. Thank you. So, now that I understand all of this, then why don't you state your name and appearance for the record, and each side has 15 minutes total. Yes, Your Honor. Jeff Fisher from Kilpatrick, Townsend. I represent Defendant Appellant Otternight Motor Club, but I'm here on behalf, I'm speaking on behalf of all appellants with respect to the denial of the motion to stay pending arbitration. I would ask, I'm going to try and keep four minutes for rebuttal time, if possible. So, that's the goal. Okay. You know it's aspirational, but we'll see what we can do. Yes, Your Honor. Thank you. So, this appeal is about contractual assent in a modern economy. Plaintiffs Dean Webb and Edgar Garcia brought TCPA claims against the defendants, alleging that they received illegal telemarketing calls attempting to sell vehicle protection contracts. Plaintiffs alleged that they bought those contracts, that they made a down payment over the phone, and that they made monthly payments on those contracts. Defendants seek to enforce the arbitration agreement and class action waiver in the contract that defendants bought, that plaintiffs bought. In an order that only contained two sentences of reasoning and no explicit factual findings, the district court found defendants had not shown that plaintiffs contractually assented to the arbitration provision. But the district court's reasoning was wrong, and it was not even defended by the appellees. So first... But there are cases on clip wrap, so a question that I have is if we were to hold that the ultimate smart club agreement is valid clip wrap agreement, do we need to remand to the district court for further findings about the contradictory evidence, or is it your position that the sworn declarations from your clients are enough to carry the burden? So Your Honor, this case is about both clip wrap and accept or return. If the court finds that the evidence is sufficient to carry our burden on clip wrap, then I think there could be a reversal, and you don't have to send it back. If the court finds there's a factual issue on clip wrap and on accept or return, in that case, I think vacatur and remand would be appropriate. In fact, if the trial court never made a finding of fact, the assent, that was never done. Correct, Your Honor. The trial court did not make an explicit factual finding on assent. I assume it was an implicit factual finding, and I think you could remand to direct discovery, to direct further factual findings. There was a question as to whether you had to click to accept before you got the agreement, right? Yes, Your Honor. That was never resolved, is that correct? The district court did not have an explicit ruling on that. Well, how could there be assent or lack of consent without a ruling on that? Well, I think there needs to be a ruling either way. I think that's right, Your Honor. And I think our position would be that there's declaratory evidence sufficient to submit our burden. But in addition to that, we would also submit that the district court's two lines of reasoning are wrong. The district court held the parties agree the plaintiffs did not see this document until after they paid over the phone. And post-purchase contracts, whether accepted by signature, electronic assent, or failure to return, are a common feature of modern commerce. They've been approved by California courts and by the United States Supreme Court. Think about buying a ticket, like on a cruise ship, and not getting the terms and conditions until you physically receive that ticket. Well, in this case, the evidence does show that they checked the box, and it does seem to be that it's, and that they received things subsequently. I think the judge here seemed to think that that type of situation wasn't allowed. So if the judge is wrong on that, but there are still declarations in the record that the, I guess it would be the appellees, they filed declarations saying they didn't click. Okay? So let's assume that we say the judge was wrong, clip wrap can happen. But I think, as my colleague Judge Antone is saying, the judge never wrestled with whether they actually clicked, or if they can come up with some explanation that they're going to say that they didn't click, and so the judge is going to have to resolve that. And it's a court trial, right? I mean, we're not talking a jury on this. We're talking a court trial on whether the click that is in the record was actually a click they made under the proper law of clip wrap. Clip wrap. Yes, Your Honor. And I think, I think that's right, that there should be a factual finding there. I think if this court finds that the evidence is sufficient to sustain our burden, I don't know that, you know, you could have a remand with direction to grant. But I also think here that the undisputed facts on the legal issues show that this was also an accept or return agreement. So we could be, you're confusing me. You say we could remand telling the court what to do, what findings the fact to make. We can't do that. We could remand saying that the standard applied was incorrect, and direct the trial court then to apply the correct standard. In other words, advising that his notion of the fact that they paid first rendered this arbitration ineffective. There was no assent, in other words. But that's all we could do, isn't it? Yes, Your Honor. Although, I also think that there could be a finding of, well, if the court, there could also be a finding of fact, if that's wrong, then I agree that vacatur and remand would be appropriate. But there's also, I think, below, the other error was that defendants did carry their burden by a preponderance of the evidence to show that there was contractual assent. First through CLCCRAP, as this court discussed, and second through an accept or return agreement. And — Well, what is your best Ninth Circuit authority for the view that an accept or return theory of assent is valid? The cases that you cite in your brief largely predate Norcia versus Sansom, which seems to expressly reject mutual assent based on inaction. So our position is not mutual assent based on inaction. I think Chau versus prepaid legal service is a California court of appeals case that postdates Knutson. It may predate Norcia. Those cases have similar reasoning. We think Knutson and Norcia are clearly distinguishable. The California and outside circuit precedents, courts have consistently found that where a plaintiff purchases a contract, failure to exercise the right to cancel that contract constitutes assent. Knutson is a — is — the plaintiff bought a car from Toyota. Involved — when you got the stack of papers that you get when you buy a car, one of the huge stack of papers was a 100-page warranty from SiriusXM related to a free trial. What the court buried in that 100-page warranty was an arbitration agreement. What the court found there was that a reasonable person in Knutson's position would not be expected to know that he would have any contractual relationship with SiriusXM, let alone that there would be an arbitration agreement that would apply to, in that case, a TCPA claim, and there's no assent, of course, when the plaintiff doesn't know about the contract. I think Wright v. SiriusXM, which is a central district case that postdated Knutson and Norcia and distinguished it, shows you the difference. There, they enforce a SiriusXM contract. The plaintiff bought the contract subscription directly from Sirius over the phone. When they — when he bought the subscription, Sirius said, you're going to get the written terms in 14 days, you're going to have the right to opt out. Then he not only — then he continued to pay. So unlike in Knutson and Norcia, where it's a free trial, there's no payments being made to Sirius or to Samsung, there's this ongoing performance of the relationship. So here, plaintiffs purchased a vehicle service contract, literally a contract. Any reasonable person would understand that that contract would be memorialized in a written document that included terms and conditions. And we don't have to guess about what a reasonable person would know, because the evidence shows — and this is the declaration of Vajira Samaratne, defendant's director of operations, that they were told on the phone that they would receive the contract within 14 days. And the documents that — that claimants — appellees produced two documents that they say they received when they clicked on the link, one by Mr. Vinding and the other by — by Mr. Webb. Both of those documents also say that you're going to receive the agreement in the mail within 14 days. They received the agreement in the mail. We produced mail delivery reports showing that both of these defendants, both of these plaintiffs received the agreement in the mail. And they — after they received the agreement in the mail, which had this broad arbitration clause, it had a right to opt out of the arbitration clause or cancel for a full refund — no penalty, full refund. And this is on the front page of the agreement. You can see it on the cover page at 115 in the record that Mr. Webb produced. The — even the cover page talks about arbitration, talks about the right to opt out. Not only did they not opt out, they continued paying their subscription fees. Mr. Webb paid two more after he received the contract. Mr. Garcia paid four more after he — Well, they were — they had given bank information or credit card information, so they were automatic debits, correct? Yeah, I — Which might be a distinguishing factor between you actually wrote out a payment or called in and make a payment. You're honest. So that's an inaction argument, I think. Thank you for that question. I think, certainly, I'm not sure it's in the record whether there was automatic credit card payments. I don't doubt that — I think I'm probably making it up. But I do — I do also think that people have a right — have an obligation to review their credit card statements, to review their bank statements, to understand what they're paying. So the idea that because it's an automatic debit, you're — it's not real performance. You don't know that that money's coming out of your account. You're talking about four — Mr. Garcia had four credit card statements with these charges on it. Mr. Webb had two. They knew that they were continuing to perform. And this is important. During that time when they're paying their premium, they could have made a claim on their car. They had coverage up to, you know, 75 percent, $7,500. They didn't make a claim, but they could have. And as a result, they received the benefit of the contract, and they're bound by the obligation. Let me — let me see if my colleagues have any questions, because I know you want to reserve some time for rebuttal. I do have a question. So this argument on assent, I don't see it anywhere in the district court's order. I don't see any analysis or discussion of whether there was assent by acceptance. And so I'm wondering what we're supposed to do with that. It seems you're asking us to weigh this evidence in the first instance and make a determination. And when you say — thank you for that question. When you say assent by acceptance, do you mean the CLICRAP or — No, not the CLICRAP. The second argument you were just making about the contract came to them and had these terms, they made the payments, et cetera. There's nothing in the district court order about that. So the district court order is a little bare on analysis. I think when they say the party — when the court says the parties agree that plaintiffs did not see this document until after they paid over the phone for purported extended warranties, I read that as a rejection of, I think, the whole concept of any accept or return contract. And I think on — in plaintiff's briefing, they made that same argument, that that sentence indicates that the court considered that argument. All right. I'll give you three minutes for rebuttal. Thank you, Your Honor. Thank you. May it please the court. Gene Stonebarger for Plaintiffs and Appellees, along with my colleague Michael Vinding. Good morning. Good morning. The district court got it right in this circumstance. The court viewed the evidence that was presented to it, found that the defendants had not carried their burden to establish that valid arbitration agreement existed. Well, it seems so. I don't know if — if we were to — I've got a question on whether the district court correctly applied the CLICWRAP law. So, if we were to find that the agreement is a CLICWRAP agreement, what's your best authority to distinguish this case from Norcia and our later cases finding those type of agreements to be enforceable? Because I think the briefing was pre-Norcia, right? The briefing in this case was post-Norcia. Oh, post. Okay. So, Your Honor, Knutson is on point here, I believe, that what's happened here is that the defendants have attempted to sell their consumers a certain product. You heard the appellant's counsel say that what they were sold was a vehicle service contract, right? Well, these were marketed as extended warranties. After the money's collected on the phone for this extended warranty bumper-to-bumper, they're sent a link, okay? Both of our plaintiffs were sent a link. Yeah, I think we know the factual part, but the question is, there is some law out there to support that these type of agreements can be okay, and the district court didn't seem to agree with that. Because there was no agreement that was actually presented through the CLIC through links. And if you look at the record, and if you look at what was sent to the consumer through the link, and I'm just pointing to, it says, please use this link to download your confirmation. And then it has a link, okay? It doesn't say about, use this link to go through your agreement. When the links clicked on, with Mr. Webb, who actually clicked on it, Mr. Garcia never clicked on anything. He never received anything. Never saw any arbitration agreement. Mr. Webb never saw an arbitration agreement, class action waiver, until weeks later when it came in the mail. But when he clicked on the link, what he saw was, and this is at evidence 1112, 112. It says, extended service protection. It says, congratulations and thank you for your purchase. You have made an excellent decision. Okay, it goes on to say, your certificate of coverage, an ID card, should arrive within the next 10 to 14 business days. What came was an ID card, but also this piece of paper that says, arbitration clauses, class action waiver. And it's right on the face, and on the top it says, dealer loyalty protection. And it says, your membership. It talks about this auto club membership. That's the arbitration clause that's sent with this auto club membership. Well, that's not what was purchased. That isn't what the trial court was involved with. The trial court, as I understand it, said, simply, they paid for it first. And that was pretty much the analysis, wasn't it? I'm trying to figure out what this hearing was about. It was an Article III kind of proceeding, right? And you all consented to the judge being the trier of fact. It wasn't a summary judgment standard, right? Your Honor, right. The defendants filed, simply, a motion to stay the case, pending arbitration. Right, a motion to stay. Yeah, right. And the court ruled on the papers that were submitted. But there was no analysis. How do we figure out what is there that shows an analysis of the clip-wrap theory? Sure. Well, I think that the court took the analysis of reviewing the declarations from the defendants put in, saying that this, telling the court that this is what the defendant clicked through. And here's some confirmation page. Not the actual content from the click-throughs. That's what we put forward. I'm talking about in the order. Where do you see that? In the order, yeah. The order, this was at 212 through 216. The court goes through the process, explains that this ultimate smart club membership that's sent is sent only after this agreement's been made and after they've purchased, not a membership, but a vehicle service contract. And what the defendants put forth, their evidence that they put forth to show that an agreed to, they put forth a form that had a different seller name that was ultimately sent to Mr. Webb. Nothing was ever sent to Garcia. You know, different membership number, different expiration date. All these different terms, right? The seller was not even the same as listed on the page that the defendant is trying to set forth to say this is the arbitration clause. I thought that was explained away as the differences in those forms being that one was for internal use and the other was for the customer and that the agreements were exactly the same except for that first page. That's what the employee of the defendant said. And then in rebuttal, as I understood it, you really didn't dispute it. Oh, no, no. The content was the same after the first page, after the cover page. Oh, the content on the terms behind. Well, with regard to those provisions, yes, but it's not the same as what was purchased over the phone because what was purchased over the phone was a bumper-to-bumper extended warranty, not this motor club membership. The document that was sent to the consumer indicates a motor club membership and that the extended warranty is incidental to the membership. When that's not the case, what these— Are you talking about the scope of the agreement, then? I'm talking about when the consumer gets this in the mail two weeks later, there's nothing that ties this to what they purchased on the phone because what they believed that they were purchasing was an extended warranty, not a motor club. We're kind of going round and round. Let me just—all right. Judge Carney found that it wasn't a valid clipwrap agreement, correct? Correct. All right. What—just go hypothetically with me on this. If we were to find that he was wrong on the law and that we find that it is an enforceable clipwrap agreement, do we then have to remand it for further findings, disputed facts? Yeah. Well, we have to find that Judge Carney made a clear error in his findings and facts. But he didn't do any factual—there's a factual dispute in terms of, arguably, that your people said they didn't click. They say they did, and we can't resolve that here. Well, the court did resolve that. He weighed the declarations that the defense put forth that said they did click, the declarations that our plaintiffs put forth said they did. Is that what he really did, or did he just get the law wrong on clipwrap agreements? I don't think he got the law wrong at all, Your Honor. There was no arbitration provision presented to the consumers on this click-through process. The arbitration agreement was never seen by any consumer that clicks through. The defendants didn't put on any evidence to even show what the consumers presented through through the online click-through. There was nothing there. The court found that there was an absence of evidence, correctly found that the defendant failed to carry their burden to put forward any evidence to show that there was a valid agreement. What came weeks later, a couple weeks later, to one of our plaintiffs, which was never signed, never returned, no one ever signed it, was not what was reflected in the purchase that had occurred on the phone weeks before. So with regard to the click-wrap argument, I believe the court did take into account everything that was put before the court, found that the records that the defendants had put forth were not credible because our plaintiffs and we had also alleged that they were populating these after the fact in order to justify claiming there was consent for the do not call list, for instance, right? I think what they're going to argue is that, citing NORCIA, the district court refused defendants' theory of electronic assent because plaintiffs received the agreement after they made the payments by phone. So if this conclusion is wrong as a matter of law, if the panel were to conclude that, it seems that it would have to be remanded for factual findings because those were not done. The agreement that came through to the consumer, Mr. Webb, did not reflect the agreement that reached over the phone. I think the court reflected that. That doesn't answer the judge's question. We're trying to figure out what finding of fact the judge made, and you tell me there are findings of fact, and I've got the order in front of me right now. The only thing I see that could constitute any kind of analysis is in the very last paragraph in Section 4, and it does two things. It says that they paid for it before they got it and that the agreement, the appearance of the agreements were different. That's it. I think. I want you to tell me if I'm wrong because I may be missing something here, but that's all I see. That Webb received it and that it was different. No, my question is, is this the entire analysis in that paragraph? No, I believe that what's important about the court's analysis, he says under the circumstances plaintiffs are given the benefit. Is there any other analysis? I know the court gives a long explanation of the law, but is this the analysis of his application of the law in this single paragraph? As to the facts that were presented to him by the defendant, which were not sufficient, right? So the judge wasn't given sufficient facts by the defendant to support the finding that there was a valid arbitration? He didn't say that. I mean, the order says what Judge Antonovitz just laid out for you. He made two points, and you're arguing the facts to us and saying we should reach a conclusion based on various facts, but the district judge didn't reach them and didn't do the analysis. I must be missing it here, respectively, because We're looking at ER 26, which is the portion of the judge's order where he provides a couple sentences of analysis, and does not say what you're saying to us. He says the agreement the defendant submits in seeking to compel arbitration looks markedly different than Mr. Webb's copy, and then he says under the circumstances, giving plaintiffs the benefit of reasonable doubts and inferences, the defendants have not proven by preponderance of the evidence. But this first part you read, that the agreements were markedly different, I don't even see you disputing that on appeal, that the two agreements were the same, the cover page was different. I didn't see you even defending the judge's conclusion there. So I'm not sure how that gets you to the point where we are to read more into this order. What Mr. Webb received was not the same as far as what was populated, and what that went to also establish is that the forms that were populated and presented to the court were, according to our allegations, fabricated, and just because it says All right, so can we agree that we can all look at the district court's order and decide what factual determinations were made? You have one interpretation. The other side may have a different interpretation, and that's what we need to look at? I think unless you find there was clear error in the factual findings from the court, where he found that they were different. Or if there were factual findings, we can look. Okay. Sure, certainly. You can see if you don't believe there were factual findings. All right. We've taken you over on that. Unless my colleagues have additional questions, that'll conclude your part of the argument, and then your colleague will get five minutes. Your Honor, I'll just be brief. Well, you've got five minutes, so. I'm still going to because you've indulged in this, so I appreciate it. No, that's okay. You've got five minutes. They're yours. Thank you. What happens in this case is that when they click, they pay. They give their credit card or debit card. They pay, and at that point, a consumer receives a link that they click on, and as the court found, they receive a policy confirmation, the extended service protection policy, certificate of coverage, important benefits of the policy, and transferability of the coverage. At some later point, another document that is supposed to be the hard copy of what they've clicked on is sent. That document is materially different in that it now includes, for the first time, the arbitration clause and the waiver of class action. In a sense, this is different than your typical click-wrap cases because, as the court in Lozano stated, that it is an economic and practical consideration when you're buying something and there is an agreement to come later. But in this case, the agreement in the sense that people click after they pay for an extended warranty, and they receive the documents. And then, I don't want to use the word sneakily, but another document arrives that materially changes, and those same economical and practical considerations— This all goes to assent, and I don't see, going back to the same issue, I don't see where there's any fact-finding on that. I can't disagree with the point that there's no factual finding. I'm not even sure what happened, based on what I see here. I mean, you're saying one thing, and they're saying another thing, but the finding is a fact. On the issue of assent in terms of what was assented to? Well, that— Yeah. So, you need the facts to apply the law. And what makes this even more difficult is that yet a third contract is provided. That's the one provided to the court, and that has those material differences. And those material differences are profound in the sense that it's a different membership number. So, if you're going to call in to make a claim, which number is it? It has a different effective date. When does it start? It has a different ending date. How do they know when it ends? These are all material differences that were not provided to the consumer at the time. Instead, what was provided to the consumer, as the court found, was the policy confirmation, extended services, protection policy, and all of the other documents. And later, a new document, which should be the hard copy of what was sent in the CLIC, is sent to the consumer with the warranty—excuse me, with the waiver of arbitration and the class action waiver as well. I don't have anything else, Your Honors. You've covered much of it with my colleagues, so unless there's any questions. We don't have additional questions. Thank you. Thank you very much. All right. We'll give you four minutes for rebuttal in light of how I've extended time. Sir, I appreciate that. So, I think the court is correct that the district court did not make explicit factual findings. What the district court did, and what he's reading from, is summarize—I think he used plaintiff's perspective and defendant's perspective on the argument. There are no factual findings related to whether—I mean, essentially, the factual question on the CLICRAP point, which is, when you click that link, what document do you get? What happens? We think our documentary and testimonial evidence is sufficient to carry that burden, but I understand, and would probably concede the court's point, that in a minimum, there should be vagator and remand to consider that question on CLICRAP. I do think, listening to our opposing counsel, there's not a factual dispute related to the acceptor return point. I think the court got the acceptor return law wrong. The court's finding that the parties agree the plaintiffs did not see this document is dispos—that's an incorrect statement of law. In their argument, there appears also to be no real dispute that defendants—that plaintiffs were sent a contract after they made this down payment and signed up. Again, they purchased a contract. These arguments about the contract was different, I think, when you purchase something like a—they thought it was a car warranty. There has to be a written document that reflects that warranty, and they were told that on the phone. So, if that document was, as they say, different than what they thought they bought—and I'll tell you that it's not. It provides 75 percent coverage up to a cap limit. It's exactly what they bought. And then it includes terms and conditions, including an arbitration clause. Well, I kind of see why Judge Carney could have been confused in that, when I'm listening to both sides here, it seems that the approach seems to be if you say it more times and you say it louder each time, that it makes what you say true. So, but we have to be constrained with what we have in front of us and what the district court's order said, and we're trying to figure that out. And I'm not finding either of you are really clarifying it any more than what I have in front of me. So, I— And I want to be helpful for that, if there's specific points. I think our evidence shows that there was assent in two ways. There was assent through receiving the contract, downloading it, clicking accept, and then they also received that contract in the mail. And even their evidence— Well, I might be able to agree with you on the click wrap, but on the—but then I still think on the click wrap, if I were to hypothetically agree, that there have to—there were not adequate findings of fact here. So, both sides would have to present evidence to the court to make those. On the accept or return theory, I'm not sure that the district court got that wrong, because all—as I said previously, all the cases that you cite were pre-NORCEA. Well, I don't think NORCEA— And NORCEA is the elephant in the room for you on that. I think NORCEA is distinguishable. And NORCEA, they bought a subscription from Verizon, and they got a box that had, again, a hundred-page warranty. This is a four-page contract. And the court found, again, that there was no notice that there was even a contract between Samsung. It also noted that if the claim had related to the warranty with Samsung, that they—it might have had a different outcome. Now, here, again, in—we cited Higgs, we cited Chow, which is a California case, Wright. Those cases are distinguishable because they actually bought a contract. They didn't buy a thing that came with some kind of terms and conditions. They bought a contract. The reasonable consumer would understand that that contract would be memorialized in writing and would contain terms and conditions. And they were notified of that. That's what distinguishes NORCEA and Metsin. All right. So you've used your time. Let me make sure my colleagues don't have any additional questions. All right. We don't, apparently. Thank you both for your argument in this case. This matter will stand submitted, and this court is in recess until 9 o'clock tomorrow. Thank you. Thank you.
judges: CALLAHAN, BADE, Antoon